*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 19, 2024

*In re* D. HITZ, Minor.

No. 369664
Ingham Circuit Court
Family Division
LC No. 23-000795-NA

Before: PATEL, P.J., and YATES and SHAPIRO,* JJ.

PER CURIAM.

In this case involving termination of parental rights, respondent-father contests a trial-court order that terminated his parental rights to his minor son, DH, under MCL 712A.19b(3)(i) (parental rights to a sibling of the child have been terminated due to sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights). On appeal, respondent-father claims the trial court erred by terminating parental rights because reasonable efforts towards reunification were not made, statutory grounds for termination did not exist, and termination was not in DH's best interests. We affirm.

## I. FACTUAL BACKGROUND

The principal issue underlying this case predates DH's birth. In 2022, respondent-father's parental rights to his daughter, EH, were terminated after EH disclosed that respondent-father had sexually abused her. See *In re E Hitz*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2023 (Docket No. 364607), pp 1-2. DH, respondent-father's biological child, was born in September 2023.[1] Shortly thereafter, Children's Protective Services (CPS) discovered that

---

[1] EH and DH have different mothers. Neither mother has had her parental rights to her respective child terminated.

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

respondent-father had fathered another child, DH, which led to the filing of a petition seeking to terminate respondent-father's parental rights to DH.

The petition requested that the trial court terminate respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*) (sibling of the child has suffered sexual abuse, the parent's act caused the sexual abuse, and there is a reasonable likelihood that the child will suffer from injury or abuse if placed in the parent's home), (j) (reasonable likelihood based on conduct of child's parent that child will be harmed if returned home), (k)(*ii*) (parent abused sibling of child, the abuse involved criminal sexual conduct involving penetration or attempted penetration, and child will be harmed if returned to parent's care), and (k)(*ix*) (parent abused sibling of child, the abuse involved sexual abuse as defined by MCL 722.622, and child will be harmed if returned to parent's care). Petitioner sought termination at the initial disposition. The trial court authorized the petition on the basis of respondent-father's prior termination resulting from his sexual abuse of EH. The court also found that reasonable efforts were not required to prevent removal because respondent-father "subject[ed] the child(ren) to the aggravated circumstance(s) of [p]ossible sex assault with intent to penetrate," under MCL 722.638(1) and (2), "as evidenced by [a] [f]orensic interview of [a] half-sibling." In addition, petitioner decided "at a conference pursuant to MCL 722.638 that immediate termination of father's parental rights is still necessary." The trial court determined that reasonable efforts to reunify respondent-father and DH were not required. Hence, the trial court placed DH with his mother, suspended respondent-father's parenting time, and ordered respondent-father to have no contact with DH.

During the joint adjudication and termination hearing, an investigator for CPS confirmed that petitioner was seeking termination of respondent-father's parental rights solely because of the prior termination of his parental rights to EH and the allegations of sexual abuse. The investigator was unsure whether there was a bond between DH and respondent-father, but noted that DH had only been in respondent-father's care for a week prior to his removal. He also indicated that DH's mother, who had sole custody of DH, would be able to keep DH safe. Respondent-father testified, denying that he ever sexually abused EH. He claimed that EH made those allegations because she was coached by her mother amid the couple's "rocky" divorce. He noted that he began counseling in February 2022 to cope with his divorce, but was not offered any services in either case.

Petitioner and the lawyer-guardian ad litem (LGAL) both asked the trial court to terminate respondent-father's parental rights because "there is a reasonable likelihood that [DH] could suffer this injury or abuse in the foreseeable future if the father was in the home." Respondent-father argued that termination would be improper because the prosecutor had failed to prove "any chronic sexual assault," he was not offered any services, and DH's mother had sole custody. Respondent-father further tried to cast doubt on the validity of the termination of his parental rights to EH. To that end, respondent-father's attorney claimed EH's case involved "really really very very limited efforts," and he "implore[d] the Court not to rubber stamp what another Court did, which seems highly suspect to me." Expanding on the challenge to the prior termination, counsel expressed his belief that "they did [the] unbelievably bare minimum and I definitely don't think that they looked into all the situations and–and uh–and took into account everything involving that case."

The trial court found that no statutory ground alleged in the petition had been proven by clear and convincing evidence, but the court nonetheless terminated respondent-father's parental rights pursuant to MCL 712A.19b(3)(i) because respondent-father's parental rights to EH had been

involuntarily terminated and he had failed to rectify the conditions that led to that termination. The trial court also found that termination was in DH's best interests because there was a limited bond between respondent-father and DH, DH needed stability because of his young age and permitting respondent-father's parental rights to remain intact could hinder DH's mother in moving forward, and respondent-father's parenting skills were below par, as demonstrated by the situation with EH and the termination of respondent-father's parental rights. This appeal followed.

## II. LEGAL ANALYSIS

Respondent-father contests the trial court's findings that statutory grounds for termination existed and reasonable efforts towards reunification were not necessary. Respondent-father further asserts that the trial court erred when it found that termination was in DH's best interests. We will address each of these issues in turn.

## A. REASONABLE EFFORTS AND STATUTORY GROUNDS

Respondent-father presents a puzzling argument that offers more questions than answers. Respondent-father seems to contend that the trial court erred by finding that a statutory ground for termination existed, and further erred by terminating his parental rights without reasonable efforts towards reunification.[2] But respondent-father has failed to establish any defect in the trial court's findings regarding the need for reasonable efforts or the propriety of termination pursuant to MCL 712A.19b(3)(i).

We review all findings about reasonable efforts and decisions on statutory grounds for clear error. *In re Sanborn*, 337 Mich App 252, 258, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (quotation marks and citation omitted). "[T]o terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

Generally, the Department of Health and Human Services "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Sanborn*, 337 Mich App at 258 (quotation marks omitted). This duty obligates the Department to undertake "reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *Id*. (quotation marks omitted). Hence, the Department "must create a service plan outlining

---

[2] It appears from respondent-father's brief that he may be challenging the trial court's findings regarding reasonable efforts and statutory grounds for termination in the previous termination case involving his daughter, EH. This Court already addressed respondent-father's appellate challenge to the termination of his parental rights to EH. See *In re Hitz*, unpub op at 2-5. In that appeal, this Court affirmed the trial court's finding that termination of respondent-father's parental rights to EH was warranted under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*). To the extent that respondent-father is again challenging the validity of the termination of his parental rights to EH, we decline to address that argument.

the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 259 (quotation marks omitted).

But under MCL 712A.19a(2), reasonable efforts towards reunification are not required in certain situations. See also *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). For example, the petitioner is not obligated to make reasonable efforts towards reunification when "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c). Also, under MCL 712A.19b(3)(i), termination of parental rights is proper when "[p]arental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights."

Here, the trial court found that termination was proper under MCL 712A.19b(3)(i) because respondent-father's parental rights to EH were terminated based upon the sexual-abuse allegation and respondent-father had not done anything to rectify that issue. Specifically, the trial court found that respondent-father "hasn't undergone any treatment or—or services—or hasn't done anything since that termination." The record supports this finding. The only service that respondent-father had undertaken since his parental rights to EH were terminated was counseling that was related to his divorce, not the sexual abuse. There is no other evidence to suggest that respondent-father had taken any other steps to rectify the conditions that led to termination of his parental rights to EH. Thus, on this record, respondent-father has failed to establish that the trial court clearly erred when it found that termination was warranted pursuant to MCL 712A.19b(3)(i).[3] Additionally, because respondent-father had his parental rights to DH's sibling involuntarily terminated and respondent-father had failed to rectify the conditions that led to termination of parental rights, petitioner was not required to make reasonable efforts towards reunification. MCL 712A.19a(2)(c). Therefore, respondent-father has not established that the trial court clearly erred in either of those respects.

## B. BEST INTERESTS

Respondent-father claims the trial court improperly terminated his parental rights because termination was not in DH's best interests. Even when the trial court finds that the petitioner has established a ground for termination by clear and convincing evidence, the court cannot terminate parental rights unless the court finds by a preponderance of the evidence that termination is in the best interests of the children. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). We review the trial court's best-interest findings for clear error. *In re Sanborn*, 337 Mich App at 276.

The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Salient factors in analyzing the best interests of

---

[3] Respondent-father fears that the first instance of termination of his parental rights has foreclosed any future "opportunity to rectify the alleged conditions and benefit from treatment." Michigan law is not so harsh. His first termination presents an insuperable barrier only if he does not rectify the conditions that led to the first termination. If he takes actions to rectify those conditions, he will be entitled to a treatment plan whenever the DHHS seeks termination of his parental rights.

the child include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Additional relevant considerations include "the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Here, the trial court found that termination of respondent-father's parental rights was in the best interests of DH because there was a limited bond between DH and respondent-father, DH was very young and needed stability, and refusal to terminate respondent-father's parental rights would prevent DH's mother from moving on in a manner that could provide further stability for DH. The trial court also ruled that DH was at risk of harm because of respondent-father's past sexual abuse of EH and respondent-father's lack of participation in services to address that problematic conduct. Additionally, the trial court found that the termination of respondent-father's parental rights to EH reflected poorly on his parenting skills. On appeal, respondent-father claims that termination was not in DH's best interests because no therapist had observed or reported about the relationship and bond respondent-father had with DH, DH's mother could protect him from harm, and respondent-father had provided a stable and loving home for DH.

Respondent-father has not cited any authority to support his contention that the trial court's best-interest analysis must rely upon a therapist's observations of the parent and child interacting. The trial court conceded that "no experts, or psychologists, or therapists, or anyone other than the caseworker and the LGAL suggest[ed] I terminate parental rights." Respondent-father refers to a lack of therapist testimony about his limited bond with DH, but he does not identify any evidence in the record to suggest that the trial court erred in finding that there was a limited bond between respondent-father and DH. Indeed, a bond between DH and respondent-father was unlikely given that respondent-father had not seen DH since he was removed from respondent-father's care when DH was less than one month old.

Respondent-father's other claims on appeal similarly do not negate the trial court's findings on this issue. Respondent-father has not identified any evidence to suggest that he "was providing a stable and loving home," and that allegation does nothing to establish that the trial court clearly erred in finding that respondent-father's lack of parenting skills, as evidenced by his sexual abuse of EH, weighed in favor of termination. That finding was supported by the testimony of the CPS investigator, who believed that DH would likely be harmed if respondent-father's parental rights were not terminated. On this record, respondent-father has failed to show that the trial court clearly erred in finding that termination was in DH's best interests.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Douglas B. Shapiro